**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

_____

Michael Ganley, Manuel J.
Granroos, Michael A. Green,
Daniel B. Grout, and Thomas Homa,

        Plaintiffs,

v.

Minneapolis Park and Recreation
Board,

        Defendant.

**MEMORANDUM OF LAW AND ORDER**
Civil File No. 05-2135 (MJD/AJB)

_____

Richard A. Williams, Jr., Williams and Iversen, Counsel for Plaintiff.

Ann E. Walther and Karin E. Peterson, Rice Michels & Walther, Counsel for Defendant.

_____

## I.   INTRODUCTION

This case is before the Court on Defendant's motion for summary judgment. [Doc. No. 9.]  Plaintiffs filed this action alleging violations of their Equal Protection and Due Process rights in relation to their collective bargaining agreement with the City of Minneapolis.  Oral arguments were held on June 14, 2006.

1

## II.   FACTUAL BACKGROUND

### A.   The Parties

Plaintiffs are employees of defendant Minneapolis Park and Recreation Board's ("Park Board") police department.  All five plaintiffs were employed as Minneapolis Police Department ("MPD") Officers before becoming Park Board Officers.

Defendant Park Board is one of three major departments of the City of Minneapolis.  The Park Board has its own police department.

The Police Officers Federation of Minneapolis ("Union") is the exclusive representative of officers working for both the Park Board and the City of Minneapolis.  The Union has separate bargaining agreements with the Park Board and the City of Minneapolis, thus recognizing them as separate employers.

Plaintiffs began their careers with the MPD before June 15, 1980.  As a result, they were members of the Minneapolis Police Relief Association Pension ("MPRAP").  Each employee retired from his position as a MPD Officer before beginning his position as a Park Board Police Officer.  By retiring, Plaintiffs began to collect pension payments, cashed out their vacation leave, and three of the five plaintiffs elected to receive partial reimbursement of their union dues.

At the same time the Park Board hired Plaintiffs, it also hired four other MPD Officers for positions as Park Board Officers.  These officers, however, began

their employment with the MPD after June 15, 1980 and were not members of the MPRAP. Instead, they participated in the Public Employee Retirement Association Pension Plan ("PERA"). These four officers did not retire from the MPD before beginning their positions with the Park Board. Hereinafter they are referred to as the "non-retired" officers.

All of the officers mentioned above resigned or retired their positions with the MPD on August 23, 2003 and began their duties as Park Board Officers on August 24, 2003. The difference in treatment between these two classes of officers when they began their jobs as Park Board Officers is at the heart of this dispute. Because Plaintiffs were retiring, they were asked to sign a "Separation Form" before starting work as Park Board Officers. Based on a clause in the Park Board Officer's collective bargaining agreement ("CBA") this resulted in them not getting credit for past experience when calculating vacation accrual and placement on the salary schedule. The non-retired officers were asked to sign a different form, the "Employee Job Change Form," which listed the change as a "lateral entry transfer," and allowed them to maintain vacation accrual and pay level status.

### B.     The Collective Bargaining Agreement

All nine former MPD Officers were covered by the same CBA negotiated between the Union and the Park Board once they became Park Board Officers.

The CBA provides in relevant part:

> Transfers between the Minneapolis Police Department and the Minneapolis Park Police Department are not permitted. However, sworn personnel employed by the Minneapolis Police Department may be eligible to be considered as a lateral entry candidate for the classification of Patrol Officer in accordance with the terms set forth herein. Notwithstanding any provisions of Section 7.7(a), to the contrary, if a Minneapolis Police Officer is hired as a Park Police patrol officer, time served in the Minneapolis Police shall be included as Department seniority for the purpose of determining the employee's vacation accrual and placement on the salary schedule.

(Walther Aff. Ex. B ¶ 7.7(b).)

Thus, under this provision, MPD Officers who became Park Board Officers lose their rank and their seniority, but are given credit for their years of service at the MPD for purposes of determining the employee's vacation accrual rate and placement on the salary schedule. The MPD, the Union, and the Park Board interpreted the use of "Minneapolis Police Officer" to mean that only active officers or current MPD employees could make use of this provision. They reason that non-current employees are not subject to the CBA, and thus not embraced by this rule. As a result of Plaintiffs' retirement, the Park Board and the Union do not consider Plaintiffs current employees and have denied them the benefits provided for in this provision.

### C.     **Plaintiffs' Allegations**

Plaintiffs argue that they have not been given credit for service with the MPD for purposes of vacation accrual and pay and that the non-retired officers

have been given these credits.  Plaintiffs assert that Defendant is interpreting the facially neutral language in Rule 7.7(b) in such a way as to deprive them of their constitutionally protected rights in violation of the Fourteenth Amendment of the Constitution.  Plaintiffs contacted the Union with respect to these violations, however, the Union refused to take any action on behalf of Plaintiffs.  Plaintiffs then filed this action, alleging violations of the Equal Protection and Due Process clauses of the Minnesota and United States Constitutions.

## III. ARGUMENTS OF THE PARTIES

### A. Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Id. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

### B. Equal Protection

Plaintiffs allege that the Park Board deprived them of equal protection in violation of the Fourteenth Amendment to the United States Constitution.

Because Minnesota law deems the federal and state equal protection clauses to be identical, both equal protection claims are subject to the same analysis. Peterson v. Minn. Dept. of Labor & Indus., 591 N.W.2d 76, 79 (Minn. Ct. App. 1999).

The Fourteenth Amendment provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

### 1. Whether the Retired Officers Are Similarly Situated to the Transferred Officers.

The Equal Protection Clause to the United States Constitution prohibits government officials from selectively applying the law in a discriminatory way. Brandt v. Davis, 191 F.3d 887, 893 (8th Cir. 1999).  The essence of the Equal Protection Clause is that similarly situated people must receive similar treatment under the law.  Post v. W.R. Harper, 980 F.2d 491, 495 (8th Cir. 1992). Therefore, if individuals are not similarly situated, the government is free to treat them differently without running afoul of the protections afforded by the clause. Bogren v. Minn., 236 F.3d 399, 408 (8th Cir. 2000).  A plaintiff bears the burden of proving that he is similarly situated to those whom he compares himself to "in all relevant respects."  Carter v. Ark., 392 F.3d 965, 968 (8th Cir. 2004).

Numerous cases have rejected equal protection claims on the grounds of

very slight dissimilarities.  See e.g., Scott v. Minneapolis Police Relief Assoc., 615 N.W.2d 66 (Minn. 2000) (holding that wife of member of MPRA was not similarly situated to the spouses of members of the PERA even though both plans covered Minneapolis police officers); Bogren, 236 F.3d at 408 (holding terminated probationary employee cannot compare herself to non-probationary employee who committed similar misconduct).

Plaintiffs have not met their burden of showing that the non-retired and retired MPD officers are similarly situated in all relevant aspects.  While they do share a number of similarities, since each of the officers was on active duty when the park positions were advertised and each resigned his MPD position and began the new park position on the same day, the similarities end there.  The operative differences in this case are that Plaintiffs were retired, received a large cash payout for vacation benefits, and are currently collecting retirement benefits in addition to their paychecks.  The non-retired officers are not receiving these benefits.

Upon close inspection, the difference between Plaintiffs and the non-retired officers, that one has retired and the other has not, is very significant and very relevant to the present dispute.  The dispute centers around vacation accrual and placement on the salary schedule.  Plaintiffs have already been compensated for the value of their service in respect to vacation accrual and placement on the

salary schedule, whereas the non-retired officers have not.  The similarities in job assignments and timing simply cannot overcome the very relevant distinction between retired and non-retired officers.

Plaintiff also argues that it would be unfair for the Court to determine that the officers are dissimilar because Plaintiffs were forced by Minnesota law to retire.  The Court does not agree.

The statute cited by Plaintiffs is inapposite and does not alter the Court's conclusion that the two groups are not similarly situated.  Minnesota Statute § 423B.12 states that "[a] person who has ceased to be an active member of the association or has knowingly failed or refused to retire, is entitled only for the refund in an amount equal to $100 per year of service credit, payable in a lump sum."  An active member of the association is defined as one who is regularly entered on the payroll of the Police Department and who is serving on active duty with the Police Department.  Minn. Stat. § 423B.01, subd. 2.  At first glance it might appear that Plaintiffs had no choice but to retire or forego these benefits.  However, because both the MPD and the Park Board are members of the MPRA, Plaintiffs continued to be active members even after beginning their new jobs as Park Board Officers.  Thus, Plaintiffs were not forced to retire, and could have begun their new positions as Park Board Officers without opting to retire from the MPD.

Accordingly, Plaintiffs are not similarly situated to the non-retired officers who have allegedly been treated differently and their equal protection claims must be dismissed on this basis.

### 2. Whether Defendant had a Rational Basis for its Action

Even if Plaintiffs and the non-retired officers were similarly situated for equal protection purposes, their claims would still fail as they do not burden a fundamental right and the CBA survives a rational basis review.

Equal protection analysis turns on the classification drawn by the statute in question. Unless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny. Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999). Suspect classifications include those such as race, alienage, gender, or national origin. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, (1985). The statute at issue in the present case does not address a suspect classification; rather, it differentiates between current MPD Officers and others. Thus, the Court applies the rational basis test when analyzing the statute.

In FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993), the Supreme Court held that "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of

facts that could provide a rational basis for the classification." Thus, as long as a plausible reason exists for the classification, the Court's scrutiny must end. Knapp, 183 F.3d at 789. Additionally, under a rational basis standard of review, the statute at issue carries with it a "strong presumption of validity." Beach, 508 U.S. at 314.

Defendant had a rational basis for enacting Rule 7.7(b) of the CBA. Rule 7.7(b) was enacted to modify its predecessor, Minneapolis Civil Service Rule 10.02. Because Rule 10.02 applied only to current employees, it is reasonable for Rule 7.7(b) to also apply only to current employees. Additionally, the CBA negotiated by the MPD Officers contained similar language. At the time the Park Board and the Union were negotiating, they hoped to promote harmonious labor relations by keeping the Park Board and the MPD CBAs similar.

Plaintiffs attack Rule 7.7(b) by arguing that it lacks a rational basis since Defendant did not ascertain the value of affected pensions before enacting or interpreting the rule. This argument makes no logical sense. Rule 7.7(b) does not address pensions on its face. The operative language does not make any distinctions relating to pensions. Instead, it merely limits its application to Minneapolis Police Officers. Moreover, Defendants have offered the required plausible reason for enacting Rule 7.7(b): to clarify its policy regarding transfers to the Park Board. Plaintiffs' claims must be dismissed on this basis also. Because

Plaintiffs and the non-retired officers are not similarly situated and because Defendant's interpretation of Rule 7.7(b) is rationally related to a legitimate governmental interest, Defendant's motion for summary judgment on this claim is granted.

### C.    Due Process

Plaintiffs also assert violations of the Due Process Clause of the United States and Minnesota Constitutions.  The same analysis applies to substantive due process claims under the Minnesota Constitution and substantive due process claims under the United States Constitution.  Boutin v. LaFleur, 591 N.W.2d 711, 716 (Minn. 1999).

Both theories of equal protection and substantive due process utilize the rational basis analysis.  Accordingly, when a rule survives rational basis review under the Equal Protection Clause, it necessarily survives rational basis review under the Due Process Clause.  Minn. Clover Leaf Creamery Co., 449 U.S. 456, 470, n.12 (1981); Knapp, 183 F.3d 789-90.

As set forth above, Defendant's basis for enacting Rule 7.7(b) is rationally related to a legitimate governmental interest.  Therefore, Rule 7.7(b) presents no Due Process Clause violation and summary judgment on that claim is granted.

Moreover, Plaintiffs' claim for deprivation of property must fail because Plaintiffs have no property right in their vacation accrual and salary schedules.

Before Plaintiffs have a right to due process, there must be a property interest at stake. A property interest deserving of constitutional procedural protection has been defined as a "legitimate claim of entitlement" and has been distinguished from a mere "expectation." Bd. of Regents v. Roth, 408 U.S. 564, 576-78, (1972).

Plaintiffs allege that they have a recognized property interest in their pension benefits under Minnesota law and that these rights have been affected. While this is a correct assertion of Minnesota law, it is an incorrect characterization of the facts of the instant case. See Christensen v. Minneapolis Mun. Employees Ret. Bd., 331 N.W.2d 740, 747 (Minn. 1983). Plaintiffs' pension rights were in no way affected by Defendant's interpretation or enactment of Rule 7.7(b). Plaintiffs made the choice to retire and invoke their rights under their pensions. Rule 7.7(b) does not alter the amount of payments, or any other benefits that Plaintiffs are entitled to under their pensions.

Plaintiffs also argue that Defendant's interpretation of Rule 7.7(b) has impaired vested contractual rights which constitute property interests for due process purposes. Plaintiffs' pension contained a provision stating that a recipient of a full pension can be employed by another city department and receive pay and benefits for that employment without reduction in pension amount. Plaintiffs argue that by its interpretation of Rule 7.7(b), Defendant has interfered with that contractual right.

This argument also has little merit.  It is true that Plaintiffs' pension guarantees that the pension amounts will not be reduced if a member works for another city agency.  Plaintiffs have been treated accordingly.  Their pensions have not been reduced as a result of their work for the Park Board.  Plaintiffs have received the consideration contemplated by their pension contract.  Plaintiffs had no more than a mere expectation of advanced placement on the vacation accrual and salary schedules and have not been deprived of their vested interest in pension benefits.  Thus, Plaintiffs' due process claims are dismissed.

Therefore, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 9] is **GRANTED** and all claims are dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 18, 2006              s / Michael J. Davis
                                       Judge Michael J. Davis
                                       United States District Court